No. 23-0303

=======================================================

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

=======================================================

In re FirstEnergy Corp. Securities Litigation, et al.

_____

Appeal from the United States District Court
for the Southern District of Ohio
No. 2:20-cv-03785
The Honorable Algenon L. Marbley

=======================================================

PLAINTIFFS-RESPONDENTS' ANSWER IN OPPOSITION TO PETITION
FOR PERMISSION TO APPEAL PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 23(f)

=======================================================


MURRAY MURPHY MOUL
  + BASIL LLP
JOSEPH F. MURRAY
1114 Dublin Road
Columbus, OH  43215
Telephone:  614/488-0400
614/488-0401 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
MARK SOLOMON
TOR GRONBORG
JOSEPH D. DALEY
HILLARY B. STAKEM
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

*Attorneys for Plaintiffs-Respondents*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: 23-0303 _____          Case Name: In re FirstEnergy Corp. Sec. Litig., et al.

Name of counsel:  Joseph D. Daley _____

Pursuant to 6th Cir. R. 26.1,    Lead Plaintiff Los Angeles County Employees Retirement Association and Plaintiffs Amalgamated
Bank, City of Irving Supplemental Benefit Plan, and Wisconsin Laborers' Pension Fund

*Name of Party*

makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> No.

---

CERTIFICATE OF SERVICE

I certify that on _____ April 24, 2023 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Joseph D. Daley _____

_____

_____

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .........................................................................................1

II.    RULE 23(f) STANDARDS ........................................................................2

III.    BRIEF FACTUAL AND PROCEDURAL BACKGROUND.......................3

    A.    Summary of Allegations.................................................................3

    B.    The Class-Certification Decision ..................................................5

IV.    REASONS FOR DENYING THE PETITION .............................................11

    A.    The district court's rigorous analysis of Plaintiffs' classwide damages methodologies satisfied *Comcast*........................................11

        1.    Defendants' charge that the district court failed to undertake "any" scrutiny of any proposed damages methodology is belied by the record.........................................11

        2.    Defendants misstate the record in order to paint the district court's Exchange Act damages holding as warranting immediate review. ........................................15

    B.    The district court's presumption-of-reliance holdings were well-grounded in the facts and relevant case law........................................18

        1.    Defendants' *Affiliated Ute* versus *Basic* arguments flow from a demonstrably false premise that, when corrected, fatally undermines their no-reliance insistence. ........................18

        2.    Even if *Affiliated Ute*'s reliance presumption were inapplicable, the district court's alternate holding that Plaintiffs satisfied *Basic* makes this Court's immediate review unnecessary. .................................................................22

    C.    The Defendants' remaining reasons for urging extraordinary immediate review are unpersuasive. ..................................................23

4878-3730-3903.v1

**Page**

V.    CONCLUSION.................................................................................26

4878-3730-3903.v1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Affiliated Ute Citizens v. United States*,
406 U.S. 128 (1972)..................................................................................*passim*

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)..................................................................................*passim*

*Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*,
843 F.3d 1119 (6th Cir. 2016) ............................................................................2

*Brooms v. Regal Tube Co.*,
881 F.2d 412 (7th Cir. 1989) ...........................................................................13

*Cammer v. Bloom*,
711 F. Supp. 1264 (D.N.J. 1989).......................................................................10

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)....................................................................................*passim*

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011).........................................................................................18

*Ferris v. Wynn Resorts Ltd.*,
2023 WL 2337364 (D. Nev. Mar. 1, 2023) ......................................................16

*In re Cmty. Health Sys.*,
2019 WL 5549319 (6th Cir. Oct. 23, 2019) ......................................................24

*In re Delta Air Lines*,
310 F.3d 953 (6th Cir. 2002) ............................................................1, 2, 23, 24

*In re Firstenergy Corp.*,
2022 WL 681320 ................................................................................................9

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000), *as amended* (June 19, 2000) ..............................15

**Page**

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
    404 F. Supp. 2d 605 (D.N.J. 2005) .......................................................................15

*In re VHS of Mich., Inc.*,
    601 F. App'x 342 (6th Cir. 2015) ........................................................................25

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013) ................................................................2, 25, 26

*Krogman v. Sterritt*,
    202 F.R.D. 467 (N.D. Tex. 2001) ........................................................................10

*Lexion Med., LLC v. Northgate Techs., Inc.*,
    641 F.3d 1352 (Fed. Cir. 2011) ..........................................................................13

*Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*,
    332 F.R.D. 370 (N.D. Ga. 2019) ........................................................................17

*NLRB v. Int'l Bhd. of Elec. Workers, Local 340*,
    481 U.S. 573 (1987)................................................................................................21

*Olden v. Lafarge Corp.*,
    383 F.3d 495 (6th Cir. 2004) ..............................................................2, 12, 15

*Rikos v. Proctor & Gamble Co.*,
    799 F.3d 497 (6th Cir. 2015) ................................................................................3

*United States v. Hardin*,
    539 F.3d 404 (6th Cir. 2008) ......................................................................21, 23

*United States v. Medina-Nevarez*,
    282 F. App'x 517 (9th Cir. 2008) .......................................................................13

*Univ. of P.R. Ret. Sys. v. Lannett Co., Inc.*,
    2023 WL 2985120 (3d Cir. Apr. 18, 2023) .....................................................16

*Waggoner v. Barclays PLC*,
    875 F.3d 79 (2d Cir. 2017) ........................................................................16, 17

4878-3730-3903.v1

Page

*Weiner v. Tivity Health, Inc.*,
  334 F.R.D. 123 (M.D. Tenn. 2020) ..................................................18

*Young v. Nationwide Mut. Ins. Co.*,
  693 F.3d 532 (6th Cir. 2012) ......................................................3, 20

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
  §77k .........................................................................................3, 7
  §77l(a)(2) ................................................................................3, 7
  §77o ............................................................................................3
  §78j(b) ................................................................................3, 7, 24
  §78t(a) ........................................................................................3

Federal Rules of Civil Procedure
  Rule 23(a) ...................................................................................5
  Rule 23(b)(3) ..............................................................................6

17 C.F.R.
  §240.10b-5 ..................................................................................3

4878-3730-3903.v1

## I.    INTRODUCTION

This Court doesn't routinely accept interlocutory appeals.  *In re Delta Air Lines*, 310 F.3d 953, 959 (6th Cir. 2002).  On the rare occasion it does, however, it's because the petitioners have successfully shown that: (i) they're likely to succeed on appeal even under the deferential abuse-of-discretion standard; (ii) a questionable class-certification ruling has created undue settlement pressure on them—and thus is dispositive of the litigation prior to final review; or (iii) the certification decision presents a novel or unsettled question of law.  *Id*. at 957-60.[1]

Defendants-Petitioners here make no such showings.  The record reveals that the district court, after a rigorous review of the myriad issues raised and evidence presented in thousands of pages of briefing and expert reports, and convening an in-depth hearing, issued its class-certification Opinion & Order (RE435) ("Opinion") rejecting most (but not all) of Defendants' arguments.  That exercise of discretion neither utilized erroneous factual findings nor misapplied relevant legal standards.  Defendants are left with wishful speculation—but "'speculation and surmise'"

---

[1]    While common, these factors aren't exhaustive.  *Id*. at 959.

cannot be allowed "'to tip the decisional scales in a class certification ruling.'" *Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1125 (6th Cir. 2016).[2]

## II.    RULE 23(f) STANDARDS

A district court's class-certification decision warrants great deference, and thus ordinarily is reviewed for an abuse of discretion. *Delta Air Lines*, 310 F.3d at 960. Because of that deference, Rule 23(f) appeals are "never to be routine" and "will be the exception, not the norm." *Id*. at 959-60; *see also In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013) ("This court has described its appellate review of a class certification decision as 'narrow ….'").

Notably, a district court's "'decision *certifying* the class'"—as happened here—"'is subject to a "very limited" review and will be reversed "only upon a strong showing that the district court's decision was a clear abuse of discretion."'" *Olden v. Lafarge Corp.*, 383 F.3d 495, 507 (6th Cir. 2004) (Court's emphasis).

In order to find a clear abuse of discretion, this Court must have a "definite and firm conviction" that the district court "committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors," or that it

---

[2]    Throughout this Answer, internal citations and footnotes are omitted and emphasis added, unless noted otherwise.

- 2 -

"'improperly applie[d] the law or use[d] an erroneous legal standard.'" *Rikos v. Proctor & Gamble Co.*, 799 F.3d 497, 504 (6th Cir. 2015); *see also Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 536 (6th Cir. 2012) ("An abuse of discretion occurs if the district court relies on clearly erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment.").

## III.    BRIEF FACTUAL AND PROCEDURAL BACKGROUND

### A.    Summary of Allegations

The underlying securities-fraud class action was brought by representative Plaintiffs on behalf of investors damaged by their purchases of artificially inflated FirstEnergy securities—both stock and Notes—during a "Class Period" spanning February 21, 2017-July 21, 2020. ¶¶1, 17-18.[3] Plaintiffs allege that the Defendants violated the Securities Act of 1933 (§§11, 12(a)(2), and 15) and the Securities Exchange Act of 1934 (§§10(b) and 20(a)), along with Securities and Exchange Commission Rule 10b-5. ¶1.

Those securities violations had their genesis in a sprawling corruption and bribery scheme perpetrated by FirstEnergy and several senior executives.  In order

---

[3]   "¶__" refers to paragraphs in the Complaint, RE72.

to secure a multi-billion-dollar legislative bailout of its two failing nuclear power plants in Ohio, FirstEnergy paid approximately $60 million in bribes to numerous individuals and entities—including Ohio's Speaker of the House Larry Householder and Ohio's Public Utilities Commission Chairman—via a web of lobbyists, dark-money groups, and faux political action committees. ¶¶64-94, 143-145.

Defendants profited mightily from the fraud. The legislation at the scheme's heart delivered approximately *$2 billion* in value to FirstEnergy—a ratepayer-funded $1.3 billion bailout of the nuclear plants, along with a $700 million "decoupling" provision that would allow FirstEnergy to charge artificially high rates. ¶5. Additionally, various FirstEnergy insiders received tens of millions of dollars in excess compensation tied to the Company's purported performance, and sold millions of dollars of their FirstEnergy securities at artificially inflated prices. ¶¶248-251. The price of inflated FirstEnergy stock topped over $50 per share, while the Company was able to secure $5 billion-plus in two public debt offerings and an equity raise. ¶¶7, 241-247.

The scheme unraveled on July 21, 2020, when the Federal Bureau of Investigation and the U.S. Attorney for the Southern District of Ohio announced the arrests of Householder and various accomplices, filing a criminal complaint and 80-page affidavit. ¶8. That complaint detailed how the corrupt scheme was

- 4 -

orchestrated by "Company A"—FirstEnergy.  ¶¶8, 143-144; *see also* ¶147 (analyst notes "it's unambiguous to us that [FirstEnergy] is the 'Company A' referred to in the affidavit").

Following disclosure of FirstEnergy's key role in the scheme, its stock price plummeted 45% and its corporate bonds suffered substantial declines.  ¶¶9, 257-260. In October and November 2020, additional disclosures about the Defendants' fraudulent conduct caused further declines in the price of FirstEnergy securities. ¶¶172-177, 186-187, 194-200.  As a result, FirstEnergy investors suffered billions of dollars in damages.

This lawsuit followed.

## B.    The Class-Certification Decision

Faced with the district court's fulsome, 51-page class-certification Opinion, Defendants' Petition doesn't challenge any of the court's Rule 23(a) analyses concluding that Plaintiffs established numerosity, commonality, typicality, and adequacy.[4]  Opinion at #9794-#9805.  Nor does it dispute the court's finding that "ascertainability" is satisfied.  Opinion at #9805-#9806.

---

[4]   This Answer addresses Defendants' Petition in No. 23-0303.   Additional Defendants have filed short "me-too" petitions joining No. 23-0303 (but omitting substantive argument), in Nos. 23-0304, 23-0305, 23-0306, and 23-0307.

Instead, Defendants take aim at the district court's reasoning and findings under Rule 23(b)(3)'s "predominance" prong concerning: (i) the availability of a classwide presumption of reliance under either *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972) or *Basic Inc. v. Levinson*, 485 U.S. 224 (1988); and (ii) Plaintiffs' proffered damages methodology satisfying *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013).

1.     The district court first laid out the parties' dueling views on damages via extensive briefing and competing expert reports.   Opinion at #9808-#9813. Defendants contended Plaintiffs' use of "statutory" formulae based on the Securities Act for the Securities Act claims and the Exchange Act for the Exchange Act claims couldn't satisfy *Comcast*'s damages-models strictures because they "fail[ed] to show how they would provide a reliable estimate of inflation consistent with their theories of liability," and that Plaintiffs hadn't identified which of their two experts' models—the "Jones Report" or the "Dalrymple Report"—they'd use to calculate damages. *Id.* at #9809.

While Defendants' arguments were essentially the same for both the Securities Act and the Exchange Act, the district court focused on the classwide measurement of damages associated with the Notes, as that was "the only question Defendants contend could predominate over common questions with respect to these

- 6 -

claims." *Id.* at #9808.  The court recognized that the Jones Report set forth a formula that was "standard" in Securities Act cases and "consistent" with §§11 and 12(a)(2) of the Act, and that "Defendants do not identify any material issue[s] with the damages models aside from their contention that the models, based upon statutory formula, are too generic to prove classwide damages." *Id.* at #9812.  The court rejected Defendants' argument as to both the Securities Act and the Exchange Act, concluding that damages sustained by Notes purchases during the Class Period "'under §§10(b), 11, and 12(a)(2) can be calculated using a common damages methodology'" to be applied "'on a classwide basis.'"  *Id.* at #9811.  The accompanying Dalrymple Report providing a methodology for Exchange Act claims "also sets forth *its complementary model* based on the statutory formula."  *Id.*

At bottom, observed the district court, no binding case law agreed with Defendants that "application of a statutory formula is insufficient to demonstrate that common questions predominate here," and the one case they proffered was "readily distinguishable."  *Id*. at #9812.  Moreover, fellow courts that considered Defendants' position had roundly rejected it.  *Id*.  Given the foregoing, held the court, "predominance is satisfied with respect to Plaintiffs' Securities Act claims."  *Id*. at #9813.

- 7 -

Given that Defendants' arguments regarding the Securities Act and Exchange Act damages formulae were essentially the same, and that those arguments were addressed in the Securities Act section of its Opinion, the district court's discussion of damages and models in the Exchange Act section was not as extensive—but nonetheless to the point.  It noted that Plaintiffs were contending their expert reports had set forth a proposed damages methodology "that can calculate classwide damages."  Opinion at #9813.[5]  Harkening back to its five pages of analysis immediately prior, the court held that its "determination that Plaintiffs' proposed damages methodology is adequate" for Securities Act claims "remains true for *these* [Exchange Act] claims" as well.  *Id*.  Nowhere did the court imply, let alone state, that the damages formulae applicable to the Securities Act claims would be the same as the formulae applicable to the Exchange Act claims.

2.     The district court held that Defendants' argument that *Affiliated Ute*'s reliance presumption couldn't apply here was undermined by its "*prior finding*" that

---

[5]   In a nutshell, the experts' models will use: (i) event studies to estimate securities' artificial inflation; (ii) remove effects of "confounding" information to isolate only fraud-related price impact attributable to Plaintiffs' liability theory; (iii) estimate securities' inflation during the Class Period; and (iv) apply a common formula to each Class Member's individual purchase and sale transaction dates "in accordance" with the Private Securities Litigation Reform Act's "statutory formula."  Plaintiffs' Reply in Further Support of Motion for Class Certification, RE346, PageID#7675.

- 8 -

the presumption appeared appropriate "'because the Court has found that Defendants made omissions of material fact.'"  Opinion at #9820 (citing the court's March 7, 2022 motion-to-dismiss ruling).  The court rejected Defendants' argument that the *Affiliated Ute* presumption applies solely to cases where allegations hinge upon "mostly or exclusively omissions" and, consistent with the Supreme Court's language, assessed whether this case was "*primarily*" based on omissions as opposed to "primarily involving affirmative misrepresentations."     *Id*. at #9820-#9821.  Leaving no room for doubt, the district court "conclude[d] from a review of the relevant misstatements and omissions from Plaintiffs' Complaint, *see In re Firstenergy Corp*., 2022 WL 681320, at \*9, 12, that the communications at issue *are primarily omissions-based*…. Accordingly, the application of *Affiliated Ute* is appropriate here."  Opinion at #9821-#9822.   Given that its application was appropriate here, "'all that is necessary' to create a presumption of reliance" is that the withheld facts be "material"—and as the court had already found, in this case they decidedly were.  *Id*.

The district court then further bolstered its reliance-presumption analysis by giving credence to Defendants' insistence that *Affiliated Ute* didn't apply because of some alleged misstatements: "Even if this case involved primarily *misstatements*,

- 9 -

Plaintiffs would be entitled to the *Basic* presumption." *Id.* at #9822 (court's emphasis).

That's because Plaintiffs had successfully shown that: (i) the alleged misstatements were publicly known; (ii) they were material; (iii) FirstEnergy securities traded in an efficient market; and (iv) Plaintiffs had traded the securities between the misrepresentations' utterances and revelation of the truth. Opinion at #9822-#9825; *see also id.* at #9814-#9816 (laying out Plaintiffs' arguments for why *Basic*'s criteria are met, including the "market efficiency" factors set forth in *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989) and *Krogman v. Sterritt*, 202 F.R.D. 467 (N.D. Tex. 2001)). Notably, the court's conclusion concerning market efficiency applied to FirstEnergy Notes as well as its common stock (Opinion at #9823-#9825)—with Defendants conceding they weren't disputing the latter.[6] Thus, "Plaintiffs would be entitled to the *Basic* presumption of reliance even if *Affiliated Ute* were inapplicable." *Id.* at #9825.

---

[6]   Defendants' Opposition to Class Certification, RE339, PageID#7199 n.11.

## IV.    REASONS FOR DENYING THE PETITION

### A.    The district court's rigorous analysis of Plaintiffs' classwide damages methodologies satisfied *Comcast*.

Defendants raise two arguments concerning the district court's "damages" findings and holdings: (i) they say the court failed to apply "*any* scrutiny" to ensure that Plaintiffs' damages methodology was consistent with their liability theory under *Comcast*; and (ii) that the court's Exchange Act certification erroneously turned on its earlier, "inapposite" Securities Act damages reasoning.  Petition at 18-19.

Both arguments are unpersuasive, and neither rises to the rarified level of warranting immediate appellate review.

### 1.    Defendants' charge that the district court failed to undertake "any" scrutiny of any proposed damages methodology is belied by the record.

Defendants' charge that the district court certified the Exchange Act class "without *any* scrutiny—let alone 'rigorous' scrutiny—of any proposed damages methodology" (Petition at 18) is debunked by the record.  That scrutiny included the following:

- the parties thoroughly briefed the issue in class-certification papers that spanned 1,500-plus pages.  *See, e.g.*, RE293, RE293-1 (Plaintiffs' moving papers); RE328, RE332, RE339 (Defendants' opposition responses); RE346 (Plaintiffs' omnibus reply brief);

- the parties presented the court with dueling expert reports on class certification, including proper damages methodologies.  *See* RE293-7 (Dalrymple Report by one Plaintiffs' expert); RE293-8 (Jones Report

- 11 -

by another Plaintiffs' expert); RE339-5 (Marietta-Westberg Report by Defendants' expert); RE346-2 (Jones Rebuttal Report); RE346-3 (Dalrymple Rebuttal Report);

•   the parties submitted hundreds of pages of expert deposition testimony. *See, e.g.*, RE346-10 (300 pages of testimony involving Defendants' expert); RE339-3 (220 pages of testimony from Dalrymple); RE339-4 (213 pages of testimony from Jones); and

•   after considering the foregoing, the district court held an hour-and-a-half hearing at which it grilled counsel while drilling down into the damages issues.  *See* 3/17/23 Hearing Tr., RE437, at 13:6-17:17 (extended damages colloquy with Plaintiffs' counsel); *id*. at 18:4-25:6 (extended damages colloquy with Defendants' counsel).

After *all* of this, having considered the competing arguments and Plaintiffs' expert submissions—as well as Defendants' attempts to discount them—the court reasonably concluded that Plaintiffs had identified sufficient classwide damages methodologies.  Opinion at #9809-#9813, #9819; *see also id*. at #9811 ("[Plaintiffs' expert's] Dalrymple Report also sets forth its complementary model based on the statutory formula."); *id*. at #9813 ("Concerning Defendants' argument that Plaintiffs fail to identify which damages model they would use, this Court notes that the models are complementary."); *id*. at #9819 ("[t]his Court concludes that predominance exists with respect to damages for the same reasons as articulated" earlier in its Opinion).  Those rulings on Plaintiffs' damages methodologies, amply supported by the record, were well within the court's discretion.  *Olden*, 383 F.3d at 507.

Defendants insist the district court was required to do *more* in demonstrating rigorous scrutiny, but they demand too much.   The court's explicit rulings, complemented by the fulsome record, together are more than sufficient to pass muster.  *See, e.g.*, *Lexion Med., LLC v. Northgate Techs., Inc.*, 641 F.3d 1352, 1359 (Fed. Cir. 2011) ("Where the record adequately supports the judgment, the district court does not have an obligation to recite every detail of its reasoning."); *Brooms v. Regal Tube Co.*, 881 F.2d 412, 419 (7th Cir. 1989) (although district court didn't "explicitly" address disputed issue, "[w]e believe that such a finding may be implicit in the district court's holding"); *United States v. Medina-Nevarez*, 282 F. App'x 517, 519 (9th Cir. 2008) (court's rulings "had sufficient support in the record to survive clear error review").

Defendants nonetheless insist that the district court committed "manifest error" by stating that Exchange Act damages predominance existed "'for the same reasons'" the court had earlier "'articulated'" about the Securities Act claims. Petition at 18.  In support, they say the court blindly "transposed" to the Exchange Act inquiry its earlier approval of the Securities Act "statutory damages" formula, even though the Exchange Act has no statutory damages formula—with the court ignoring "that basic distinction."  *Id*.

Defendants' re-writing of the court's actions is wrong on several levels.

- 13 -

First, the district court wasn't as stingy with its Exchange Act damages-methodology analysis as Defendants portray. As noted *supra*, the court received thousands of pages of briefing arguing for/against class certification, considered the competing experts' reports and deposition testimony, and engaged in extended colloquy about damages with counsel at the class-certification hearing. Then, five pages prior to its "same reasons" conclusion that Defendants disparage, the court approvingly noted Plaintiffs' contention that their expert reports had set forth a "proposed damages methodology" for the Exchange Act claims "that can calculate classwide damages." Opinion at #9813. The court ultimately ruled that its express "determination" that the Securities Act proposed damages methodology was adequate for those claims also "remains true for *these* claims"—*i.e.*, the Exchange Act claims. *Id*. That made sense, as Defendants had made the same arguments challenging both the Securities Act and Exchange Act methodologies.

Moreover, Defendants overlook that there *is* a statutory-damages aspect to the Exchange Act under the Private Securities Litigation Reform Act of 1995 ("PSLRA")—which aspect Plaintiffs' expert Dalrymple discussed at length. Dalrymple Report, RE293-7, ¶109 (discussing PSLRA's 90-day look-back limitation on damages). Plaintiffs also flagged that in their Reply in Further Support of Motion for Class Certification (RE346, PageID#7675). That statutory limitation

- 14 -

complements the well-settled "out-of-pocket" damages methodology proffered by Plaintiffs' experts; in fact, per Congress it's a *necessary* component of any damages calculation. *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 461 (9th Cir. 2000) ("district court did not abuse its discretion in approving of a [damages] methodology similar to the one that Congress has mandated" in PSLRA), *as amended* (June 19, 2000); *In re Royal Dutch/Shell Transp. Sec. Litig.*, 404 F. Supp. 2d 605, 609-10 (D.N.J. 2005) (PSLRA's statutory "limitation on damages … is consistent with the out-of-pocket loss measure of damages traditionally applied by courts").

Avoiding record facts and relevant precedents, Defendants have failed to make a "'strong showing'" that the district court's decision was a clear abuse of discretion. *Olden*, 383 F.3d at 507.

### 2.   Defendants misstate the record in order to paint the district court's Exchange Act damages holding as warranting immediate review.

Defendants' second reason for seeking review of the district court's Exchange Act damages holding is that it certified the Exchange Act claims even as the court supposedly "acknowledged that Plaintiffs 'fail[ed] to identify which damages model they would use.'" Petition at 19. That's admittedly powerful stuff—if it were true. But the district court said no such thing.

- 15 -

Instead, the district court was simply repeating *Defendants' own argument—which it then rejected*. Opinion at #9813 (rejecting "Defendants' argument that Plaintiffs fail to identify which damages model they would use," because "this Court notes that the models are complementary"); *see also id*. at #9811 (after going through the Jones Report, expressly finding Dalrymple Report "also sets forth its complementary model" for the Exchange Act "based on the statutory formula"). Regrettably, Defendants have veered close to misleading this Court; at the least they've fatally undercut their rationales for immediate review.

Defendants' carping about Plaintiffs' experts' purportedly "generic methodologies" that won't be identified until "*later*" in the case (Petition at 20 (Defendants' emphasis)) fares no better.

What Defendants belittle as "generic" is actually *the* gold-standard, well-accepted method for calculating Exchange Act damages. *See, e.g.*, *Univ. of P.R. Ret. Sys. v. Lannett Co., Inc.*, 2023 WL 2985120, at *4 (3d Cir. Apr. 18, 2023) ("[plaintiff] properly asserted a single, long-accepted damages theory (the out-of-pocket loss theory) tied to a single theory of liability (Lannett's misrepresentations inflated its stock's value, and the value declined when the truth emerged)"); *see Waggoner v. Barclays PLC*, 875 F.3d 79, 106 (2d Cir. 2017) (approving similar methodology); *see also Ferris v. Wynn Resorts Ltd*., 2023 WL 2337364, at *12 (D.

- 16 -

Nev. Mar. 1, 2023) ("Courts have accepted similar methodologies at the class certification stage to measure damages on a class-wide basis."). The record demonstrates that both experts proposed detailed, well-accepted methods of measuring damages under the Exchange Act. Jones Report, RE293-8, ¶¶101-106; Dalrymple Report, RE293-7, ¶¶12, 103-104.

So far as "later" is concerned, Plaintiffs' expert made clear that while the methodology was already set down, he hadn't been charged with providing "an opinion on the quantification of damages in this matter." Dalrymple Rebuttal Report, RE346-3, ¶16. That final plug-in of figures used to calculate damages logically requires the litigation to progress further, "after the relevant factual record is complete." *Id.*, ¶22. But inserting specific figures later doesn't detract from the *present* existence of a methodology that is commonly used to measure class-wide damages. *Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 399 (N.D. Ga. 2019) (specific inputs into accepted damages model must await "development of the fact record on the merits").

Defendants' insistence that Plaintiffs offered "no methodology" accounting for varying levels of inflation throughout the Class Period (Petition at 20) likewise fails. They cite no authority to support that argument—and they ignore authorities *rejecting* it. *See, e.g.*, *Waggoner*, 875 F.3d at 106 (rejecting argument that damages

- 17 -

model "failed to account for variations in inflation over time," as "*Comcast* does not suggest that damage calculations must be so precise at this juncture")*; see also Weiner v. Tivity Health, Inc*., 334 F.R.D. 123, 138 (M.D. Tenn. 2020) (argument that damages model "does not account for time-varying inflation" is "premature"). What Defendants are actually targeting is the notion of "loss causation" at various junctures throughout the Class Period—but loss causation needn't be proven at class-certification. *Erica P. John Fund, Inc. v. Halliburton Co*., 563 U.S. 804, 807 (2011).[7]

**B.    The district court's presumption-of-reliance holdings were well-grounded in the facts and relevant case law.**

**1.    Defendants' *Affiliated Ute* versus *Basic* arguments flow from a demonstrably false premise that, when corrected, fatally undermines their no-reliance insistence.**

The linchpin of Defendants' no-reliance argument is that the district court cavalierly misapplied the *Affiliated Ute* presumption. Petition at 11. They assert

---

[7]    Defendants' snark that Dalrymple "copied his report" from another case where it was supposedly "found insufficient" (Petition at 21) is weak sauce. In truth, the "insufficient" portion concerned an unusual "materialization-of-the-risk" liability theory—which isn't present here—but the court there *did* approve Dalrymple's damages methodology vis-à-vis corrective disclosures—like those alleged here. *See* Plaintiffs' Response to Defendant FirstEnergy Corp.'s Notice of Supplemental Authority in Opposition to Plaintiffs' Motion for Class Certification, RE426, PageID#9680.

that the court "suggested" that *Affiliated Ute* applies to cases "involving both omissions and affirmative misstatements, *rather than those that 'primarily involv[e] omissions.'*"  *Id*.  Relatedly, Defendants argue, the court consequently held that it was applying *Affiliated Ute*, "regardless of whether 'Plaintiffs' allegations hinge upon *mostly* or *exclusively* omissions.'"  *Id*. (Defendants' emphasis).

As with any linchpin, however, once it's removed the entire mechanism comes tumbling down—and so it is here, given Defendants' fanciful recitation of the court's reasoning.

What the district court *actually did* was first survey the various permutations of the presumption's application suggested by other courts, then ultimately conclude that "*nonetheless … the communications at issue*" here "*are primarily omissions-based*."  Opinion at #9821; *id*. at #9822 ("application of *Affiliated Ute* is appropriate here").  That plainly stated holding: (i) obliterates Defendants' linchpin premise; and (ii) shows that the court agrees that *Affiliated Ute* is reserved for matters involving "'primarily'" omissions.  Petition at 11.[8]

---

[8]    Defendants' *amici* follow them into error by ignoring the district court's "omissions" finding, insisting that *Affiliated Ute* cannot apply because "this case … is based on alleged misrepresentations."  *See* Amicus Curiae Brief of Former SEC Officials and Law Professors in Support of Petitioners, at 6.  They compound the error by asserting that *Affiliated Ute*'s presumption applies "only in cases alleging omissions" (*id*. at 7)— omitting *Affiliated Ute*'s key modifier "primarily."

- 19 -

Just as they did earlier when making it appear that their *own* quoted criticisms of Plaintiffs' expert were the district court's, Defendants again play fast-and-loose with the record in attempting to manufacture judicial error. This Court shouldn't reward the tactic.

The district court didn't say that, absent Sixth Circuit authority, it "was 'persuaded' that the presumption can apply in a 'mixed case of omissions and misstatements'" (Petition at 11)—with Defendants implying that without this Court's guidance, that "persua[sion]" spurred the district court's ruling. Instead, the court noted that *Affiliated Ute* would "not be necessarily inapplicable *even if* this case were a mixed case of omissions and misstatements"—*but then immediately clarified* in its actual holding that "*nonetheless*" this case was "primarily omissions-based." Opinion at #9821.

That conclusion warrants deference, as does the district court's finding leading off the discussion—namely, that Defendants' *Affiliated Ute* argument is "undermined by th[e] Court's prior finding" that "'[t]he *Affiliated Ute* presumption … appears appropriate.'" Opinion at #9820. That finding must be honored, absent a showing that it was "clearly erroneous." *Young*, 693 F.3d at 536.

Defendants make no such showing; indeed, they don't even mention the finding.[9] Nor do they challenge the court's companion finding—both at the motion-to-dismiss stage, and again at class certification—that, as *Affiliated Ute* requires, the omitted facts were "material."  Opinion at #9822.

In sum, the district court held that, no matter the surveyed courts' take on *Affiliated Ute*'s possible applications, the communications here "are primarily omissions-based" and so *Affiliated Ute*'s application was proper.  Opinion at #9821. It's *that* holding, along with the unchallenged findings supporting it, that matter for purposes of class certification.[10]

The court's other observations were dicta—unnecessary to its reliance-presumption conclusion.  *See, e.g.*, *NLRB v. Int'l Bhd. of Elec. Workers, Local 340*, 481 U.S. 573, 591 n.15 (1987) (statement "unnecessary to the disposition" of the issue is "dictum"); *United States v. Hardin*, 539 F.3d 404, 415 (6th Cir. 2008) ("when 'the facts of the instant case do not require resolution of the question[,]' any statement regarding the issue is simply dicta").

---

[9]  The court made that finding while denying Defendants' motions to dismiss. Opinion at #9820.  Defendants never sought reconsideration.

[10]  That fact-intensive finding eviscerates Defendants' repeated insistence that Plaintiffs are only complaining about "half-truths." *E.g.*, Petition at 13-14.

> **2.** **Even if *Affiliated Ute*'s reliance presumption were inapplicable, the district court's alternate holding that Plaintiffs satisfied *Basic* makes this Court's immediate review unnecessary.**

Accepting *arguendo* Defendants' insistence that this case primarily involves affirmative misstatements (Petition at 6, 8) rendering *Affiliated Ute* inapplicable, the district court's alternative holding means that reliance still predominates on a classwide basis: "[e]ven if this case involved primarily *misstatements*, Plaintiffs would be entitled to the *Basic* presumption." Opinion at #9822; *see also id*. at #9825 ("Plaintiffs would be entitled to the *Basic* presumption of reliance even if *Affiliated Ute* were inapplicable.").

Those weren't off-the-cuff comments. Rather, the district court undertook a fulsome *Basic* analysis, applying the relevant precedents to record facts. *Id.* at #9822-#9825. (That analysis focused on the presumption of reliance as to FirstEnergy's *Notes* while exploring market efficiency; Defendants already made clear they weren't challenging market efficiency for FirstEnergy *stock*.)

Defendants mount no serious challenge to the court's alternative holding as a standalone proposition. Instead, they argue that the district court can't apply *Basic* "simultaneously" with *Affiliated Ute*, or save it for a later "redo" if needed. Petition at 17.

That's a straw man argument.

- 22 -

The district court didn't say it was going to apply *both* presumptions at the same time, or even seriatim.  Instead, it accepted the premise, for purposes of a reliance inquiry, that Defendants *were* correct that this case involved primarily *misstatements*—making *Affiliated Ute* inapplicable.  Opinion at #9822; *see also id.* at #9825.  It then engaged in four pages of analysis, citing case law and record facts, showing how *Basic*—and *Basic* alone—applied.  *Id*. at #9822-#9825.[11]

## C.    The Defendants' remaining reasons for urging extraordinary immediate review are unpersuasive.

Defendants' Petition winds up with a smattering of reasons they say supports immediate appellate review versus awaiting final judgment.  Each falls short.

1.    *Death knell*.  This Court counsels that when a class-certification party has shown that the costs of continuing litigation may thwart later review—the so-called "'death-knell'" factor—along with a demonstrated likelihood of success on appeal, interlocutory review may be proper.  *Delta Air Lines*, 310 F.3d at 960.  But an actual death-knell *showing* is required, giving the Court real insight "into

---

[11]  While the district court noted, in passing, that Defendants hadn't cited precedent holding that *Basic* and *Affiliated Ute* couldn't be "engage[d] … simultaneously" (Opinion at #9822), that comment was dictum in light of the court's standalone application of *Basic*.  *Hardin*, 539 F.3d at 415.

- 23 -

potential expenses and liabilities." *Id*. No "general assertion" of a prohibitive barrier to eventual review suffices. *Id*.

Yet that's what Defendants have done. They make vague allusions to potential billion-dollar liability (Petition at 21-22), but never explain their potential expenses and liabilities. Indeed, even if FirstEnergy *were* facing billions of dollars in liability, merely stating as much is insufficient. *In re Cmty. Health Sys.*, 2019 WL 5549319, at *2 (6th Cir. Oct. 23, 2019) ("generalized allegations of harm are insufficient"). It's also relevant that FirstEnergy recently noted 2022 revenues of $12.5 billion,[12] and total assets of $46 billion.[13] Those figures undermine any suggestion that Defendants' "potential liability," even if "enormous," [makes] settlement "'a foregone conclusion.'" *Cmty. Health Sys.*, 2019 WL 5549319, at *2.

2.    *Unsettled law*. Defendants say immediate review is needed because other courts in this Circuit have given *Comcast* short shrift. Petition at 22. Yet there's nothing unsettled about using an out-of-pocket damages model in Exchange Act §10(b) suits, and this Court has explained that *Comcast* "'breaks no new ground

---

[12]  https://investors.firstenergycorp.com/investor-materials/news-releases/news-details/2023/FirstEnergy-Announces-Fourth-Quarter-and-Full-Year-2022-Financial-Results/default.aspx, visited April 23, 2023**.**

[13]  https://s27.q4cdn.com/655807321/files/doc_financials/2022/q4/Fourth-Quarter-2022-Investor-FactBook.pdf, visited April 23, 2023.

4878-3730-3903.v1

on the standard for certifying a class action.'" *Whirlpool*, 722 F.3d at 860; *In re VHS of Mich., Inc.*, 601 F. App'x 342, 344 (6th Cir. 2015) (*Comcast* concerns "where *multiple* theories of liability exist, those theories create separable anticompetitive effects, *and* the combined effects can result in aggregated damages."). Here, there aren't multiple theories of liability, and Plaintiffs' damages methodologies will measure the inflation in FirstEnergy common stock or Notes throughout the Class Period. Jones Report, RE293-8, ¶¶101-106; Dalrymple Report, RE293-7, ¶¶12, 103-104.

Defendants' claim that the district court's *Affiliated Ute* holding raises "'novel'" and "'unsettled'" questions (Petition at 15) is likewise overblown. The court found that this case "primarily" involves omissions (Opinion at #9821)—an unblemished finding on all fours with *Affiliated Ute*'s application.

3. *Importance to class-action litigation*. Defendants' "importance" points merely state the obvious—that the correct application of *Affiliated Ute* and proper operation of *Comcast* are important to class-action litigation as a whole. Petition at 16, 23. But that's precisely what the district court here found concerning reliance and damages methodologies, and Defendants haven't shown why those conclusions don't warrant deference.

Nor did Plaintiffs' experts proffer "vague promise[s]" to come up with a sufficient methodology "later." *Id.* at 23. They've set forth, in exhaustive detail, proposed damages methodologies that will be used to measure damages to FirstEnergy shareholders on a class-wide basis. Dalrymple Report, RE293-7, ¶¶103-110; Jones Report, RE293-8, ¶¶101-106.

At bottom, Defendants fail to make a "strong showing" that the Opinion's reliance and damages-methodology rulings "amounted to a clear abuse of discretion." *Whirlpool*, 722 F.3d at 850. Interlocutory review isn't warranted.

## V.    CONCLUSION

Defendants' disagreement with the district court's application of settled legal standards to the facts in this case provides no basis for the extraordinary Rule 23(f) review requested.

 DATED:  April 24, 2023                Respectfully submitted,

                                       ROBBINS GELLER RUDMAN
                                         & DOWD LLP
                                       DARREN J. ROBBINS
                                       MARK SOLOMON
                                       TOR GRONBORG
                                       JOSEPH D. DALEY
                                       HILLARY B. STAKEM


                                       _____
                                          *s/Joseph D. Daley*
                                       JOSEPH D. DALEY

- 26 -

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

MURRAY MURPHY MOUL
  + BASIL LLP
JOSEPH F. MURRAY (0063373)
1114 Dublin Road
Columbus, OH  43215
Telephone:  614/488-0400
614/488-0401 (fax)

*Attorneys for Plaintiffs-Respondents*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that the foregoing PLAINTIFFS-RESPONDENTS' ANSWER IN OPPOSITION TO PETITION FOR PERMISSION TO APPEAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(f) complies with the type-volume limitation of Fed. R. App. P. 5(c) because the text of the brief comprises 5,189 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f), according to the word count provided by Microsoft Word 2010 word processing software.  The undersigned further certifies that the foregoing document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 word processing software in Times New Roman, 14-point.

*s/Joseph D. Daley*
JOSEPH D. DALEY

# DECLARATION OF SERVICE

I, the undersigned, declare:

1.      That declarant is and was, at all times herein mentioned, a citizen of the United States and employed in the City and County of San Diego, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 655 West Broadway, Suite 1900, San Diego, California 92101.

2.      I hereby certify that on April 24, 2023, I electronically filed the foregoing document: PLAINTIFFS-RESPONDENTS' ANSWER IN OPPOSITION TO PETITION FOR PERMISSION TO APPEAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(f) with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system.

3.      I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 24, 2023, at San Diego, California.

*s/Joseph D. Daley*
JOSEPH D. DALEY